## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JOSE E. PAYNE,                           *
                                         *
            Plaintiff,                   *
                                         *
      v.                                 *        Civil Case No. SAG-20-00034
                                         *
FORD MOTOR CREDIT CO., LLC,              *
                                         *
            Defendant.                   *
                                     ******

## MEMORANDUM

Plaintiff Jose E. Payne ("Payne") filed this action in the Circuit Court for Baltimore City against Defendant Ford Motor Credit Company LLC ("FMCC"), alleging that FMCC violated Maryland state debt collection and consumer protection laws, and state tort law, by garnishing his bank account to collect a judgment.  ECF 4.  FMCC removed the case to federal court.  ECF 1. Pending is FMCC's Motion to Dismiss the Amended Complaint ("Motion"), ECF 25.  Payne filed an opposition, ECF 28, and FMCC filed a reply, ECF 29.  No hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons stated herein, FMCC's Motion will be granted in part and denied in part.

### I.    Factual and Procedural Background

The facts recited herein are derived from Payne's Amended Complaint, ECF 18.  Payne purchased a Ford Mustang in 1997, while he served in the United States Army in Louisiana.  *Id.* ¶ 1.  In May, 2000, following an honorable discharge, Payne returned to his home in the Republic of Panama.  *Id.* ¶ 2.  Because he lacked steady employment in Panama, Payne missed several car payments, although he remained in regular contact with FMCC.  *Id.* ¶ 3.  FMCC's collection notes, as of October, 2000, accurately reflected that Payne, and his Mustang, were in Panama.  *Id.* ¶ 4. However, on June 2, 2002, FMCC sued Payne in the District Court for Anne Arundel County,

Maryland. *Id.* ¶ 7. FMCC effected substitute service on Payne's step-brother at an address in Maryland. *Id.* ¶ 9. Payne alleges that at the time of that substitute service, he did not live at the Maryland address, and still resided in Panama City, Panama. *Id.*

FMCC obtained an Affidavit Judgment against Payne, for breach of a "Louisiana Vehicle Retail Installment Contract," in the District Court of Maryland for Anne Arundel County on September 3, 2002. *Id.* ¶ 10. Less than two weeks later, FMCC requested copies of the judgment "for filing in a foreign jurisdiction," listing an address for Payne of "Air Facility, 7311NW12thSt #26 aka Jose D. Payne 424PTY, Miami, FL 33126." *Id.* ¶¶ 17, 18. Google Maps suggests that the Miami address FMCC cited is a commercial warehouse. *Id.* ¶ 21.

On June 28, 2005, FMCC filed an "Affidavit on Recording Foreign Judgment Pursuant to Florida Uniform Enforcement of Foreign Judgments Act" in court in Dade County, Florida. *Id.* ¶ 22. The documentation listed the Miami address as Payne's "last known Post Office address." *Id.* Payne alleges that he never lived in that warehouse or at any other address in Florida, and does not own any real property, hold any bank accounts, maintain any employment, or have any assets in Florida. *Id.* ¶¶ 22–24. Occasionally, Payne and his wife had directed international purchases from the United States to be sent to a private shipping forwarder in Florida for bundling and shipping to Panama. *Id.* ¶ 25. Payne understands that FMCC's attorney mailed "Notice of Recording of Foreign Judgment" to Payne at the address for the Miami warehouse, but Payne never received it. *Id.* ¶ 29.

Payne eventually returned to the United States, moving to Maryland in October, 2013. *Id.* ¶ 5. Years later, on or about August 27, 2019, FMCC filed a "Motion for Final Judgment Against Garnishee" in the County Court for Dade County, Florida. *Id.* ¶ 35. The requested Order directed Wells Fargo Bank, N.A. ("Wells Fargo") to pay $17,459.29 from Payne's bank account to "Ford

Motor Credit Company Trust Account." *Id.* ¶ 36. The Dade County Court entered judgment and issued the order of garnishment, and Wells Fargo paid the funds as ordered. *Id.* ¶¶ 36–37.

On or about November 7, 2019, Payne filed suit in the Circuit Court for Baltimore City, asserting claims of unjust enrichment, invasion of privacy, intentional interference with economic relations, and violations of the Maryland Consumer Debt Collection Act ("MCDCA"), and the Maryland Consumer Protection Act ("MCPA"). ECF 4. FMCC timely removed the action to this Court on January 8, 2020. ECF 1.

## II.   Legal Standards

FMCC seeks dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Fed. R. Civ. P. 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. *See Khoury v. Meserve*, 628 F. Supp. 2d 600, 606 (D. Md. 2003), aff'd, 85 F. App'x 960 (4th Cir. 2004). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008). Thus, the court may properly grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), aff'd sub nom., *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of*

*Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ..."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), cert. denied, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), cert. denied, 566 U.S. 937 (2012).

## III.   Analysis

### A.  Fed. R. Civ. P. 12(b)(1) and the *Rooker-Feldman* Doctrine

Initially, the Court notes that FMCC chose to remove this case to federal court from the state court in which it was filed, but now seeks dismissal on the grounds that federal court lacks subject matter jurisdiction because of the *Rooker-Feldman* doctrine. Setting aside the inherent inconsistencies in those actions, this Court disagrees that the *Rooker-Feldman* doctrine applies.

The doctrine in question is derived from the holdings of the Supreme Court in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), in which a plaintiff sought a declaration that state-court judgments against him were null and void, and *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983), in which a plaintiff sought review of the merits of the denial of his bar admission by the District of Columbia Court of Appeals. In more recently summarizing the doctrine's import, the Supreme Court described, "The *Rooker-Feldman* doctrine . . . is confined to cases from which

the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commended and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In both *Rooker* and *Feldman,* the Supreme Court determined that the federal district court lacked jurisdiction to adjudicate what amounted to requests to reverse or modify the judgments of the state courts. *Rooker*, 263 U.S. at 416; *Feldman*, 460 U.S. at 486–87.

The *Rooker-Feldman* doctrine's prohibition, however, is exceedingly narrow. "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Exxon Mobil*, 544 U.S. at 293 (citation omitted). As the Fourth Circuit has explained, *Rooker-Feldman* "applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." *Davani v. Va. Dept. of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006). The mere fact that a plaintiff's claim "challenges conduct that was previously examined in a state court action" does not bar the federal court's exercise of jurisdiction. *Elyazidi v. SunTrust Bank*, 780 F.3d 227, 233 (4th Cir. 2015).

Setting aside the fact that Payne, the "loser in state court," did not actually file his suit in federal court to seek redress, his lawsuit also does not seek mere review of the Maryland or Florida judgments against him. *See Thana v. Bd. of License Comm'rs for Charles County Maryland*, 827 F.3d 314, 316 (4th Cir. 2016) ("Because Thai Palace did not request the district court to conduct appellate review of the state court judgment itself, the *Rooker-Feldman* doctrine does not apply."). Nor does Payne's suit allege injury "caused by the state court's decision *itself*." *Davani*, 434 F.3d at 713 (emphasis added). Instead, Payne's allegations focus on FMCC's conduct: what he alleges

6

to be its pursuit of state court judgments and garnishments under circumstances in which FMCC knew or should have known that its address information was inaccurate.  The injuries Payne asserts were not "caused by the state court judgments themselves, but by FMCC's actions in procuring and then enforcing those judgments.  Accordingly, his claims are "separable from and collateral to the merits of the state-court judgment[s]."  *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 21 (1987) (Brennan, J. concurring).   Moreover, the Fourth Circuit recently restricted application of the *Rooker-Feldman* doctrine to situations in which a district court is "called upon to exercise appellate jurisdiction" over a final judgment from "the highest court of a State in which a decision could be had."  *Thana,* 827 F.3d at 321.  Neither the Maryland judgment from Anne Arundel County nor the Florida judgement from Dade County, both of which were entered uncontested in the lower courts and were not further challenged, were ever subjected to review by the respective state's highest court.  This Court therefore ascertains no bar to its exercise of subject-matter jurisdiction, and turns to the question of whether FMCC has stated claims on which relief can be granted.

### B.  Rule 12(b)(6) Motion

#### 1.  Count I – Unjust Enrichment

Payne alleges that FMCC was unjustly enriched by its wrongful garnishment of his bank account.  ECF 18 ¶ 56.  In Maryland, the elements of unjust enrichment are:

> (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation of knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

*Klein v. Fidelity & Deposit Co. of America*, 117 Md. App. 317, 346 (Md. Ct. Spec. App. 1997). Taking the alleged facts as true and in the light most favorable to Payne as the non-moving party, FMCC used an address that it knew to be incorrect to register its judgment in Florida, and then later used the Florida judgment to procure the garnishment of funds from Payne's bank account, at a time when its Maryland judgment had expired.  Under that theory, it is plausible that a

reasonable factfinder could determine that FMCC was unjustly enriched when it effected the garnishment in 2019, regardless of the valid underlying debt originally owed by Payne to FMCC.[1]

Moreover, the existence of an express contract does not foreclose the possibility of unjust enrichment where the right to collect under the express contract is in question. It is true that, where an express contract exists, a Plaintiff cannot allege unjust enrichment for *performance* of that contract. *See Bright v. QSP, Inc.*, 20 F.3d 1300, 1306 (4th Cir. 1994) (foreclosing unjust enrichment complaints regarding the receipt of benefits at a below-market rate because these benefits were conferred pursuant to the explicit terms of a valid contract). Here, however, the dispute is not about whether the terms of performance unjustly enriched FMCC, but whether FMCC was unjustly enriched by enforcing the contract through an unenforceable judgment. As a result, the motion to dismiss Count I will be denied.

2. **Counts II and III: MCDCA and MCPA**

The actions Payne alleges to have violated the MCDCA and MCPA were taken by FMCC in Florida.[2] *See* ECF 18 ¶ 70 (alleging that FMCC violated the MCDCA "[b]y wrongfully garnishing Mr. Payne's bank account based on a judgment issued by a Florida court which had no jurisdiction over him"); *Id.* ¶ 89 ("Defendant violated the MCPA by garnishing Mr. Payne's bank account . . ."); *Id.* ¶ 90 ("Defendant engaged in unfair and deceptive practices by pursuing a garnishment based on a Florida order issued by a court that did not have jurisdiction."). Specifically, Payne alleges that FMCC misrepresented a Florida address to the Dade County court

---

[1] Of course, a reasonable factfinder could also conclude that FMCC's retention of the garnished amount is equitable, in light of Payne's failure to make the required payments on the underlying contract.

[2] While the Amended Complaint does also allege improper service of the original action FMCC filed in Maryland, as described above, Payne is not challenging the validity of the original Maryland judgment in this lawsuit, but is challenging FMCC's garnishment efforts, which occurred in Florida. Any claim based on FMCC's conduct in the Maryland courts back in 2002 would be long time-barred.

as Payne's address, knowing it to be inaccurate, and then sought a garnishment order in the same Dade County court to further collection of the same Florida judgment, after its Maryland judgment had expired. The Writ of Garnishment was addressed to Wells Fargo at an address in Tallahassee, Florida. ECF 25-12. Thus, while Payne may have resided in Maryland at the time of the garnishment, none of FMCC's challenged collection actions occurred in that state.

As the Fourth Circuit has held, the MCDCA and MCPA have no application where the offensive actions occurred entirely extraterritorially. *Elyazidi v. SunTrust Bank*, 780 F.3d 227, 237–38 (2015). In *Elyazidi*, a Virginia resident sued her bank and its lawyers, alleging that they violated the MCDCA and MCPA by using a Maryland law firm to successfully sue her in Virginia to recover damages sustained when she overdrew her checking account. *Id.* at 230. The Fourth Circuit upheld the district Court's ruling that neither Maryland statute applies to conduct occurring "entirely" in Virginia (despite the fact that the law firm presumably prepared the documentation in its Maryland offices), reasoning that the "critical point" is "whether some significant portion of the challenged activity occurred" in Maryland." *Id.* at 237. Here, like in *Elyazidi,* the challenged activity is litigation occurring extraterritorially, in Florida. Because Payne has not alleged any actions taken by FMCC in Maryland violative of the MCDCA or MCPA, he cannot avail himself of the protections of those statutes, and his claims must be dismissed.[3]

### 3.    Counts IV and V: Invasion of Privacy

Payne invokes two forms of the Maryland tort of invasion of privacy: false light (Count IV) and intrusion upon seclusion (Count V). However, he has failed to plead a viable claim for relief under either form.

---

[3] This Court further notes that, even if the two Maryland statutes were applicable in this case, many of Payne's claimed "violations" are unsupported by his Complaint's factual allegations. For example, Payne has not alleged any disclosure of false information, any abusive or harassing communications, or any use of a communication which simulates legal or judicial process.

Looking first at his false light claim, in Maryland, "[a]n allegation of false light must meet the same legal standards as an allegation of defamation." *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012). The allegedly false or defamatory statement must tend to expose a person to "public scorn, hatred, contempt, or ridicule" and must be "not substantially correct." *Id.* Here, the information allegedly disclosed by FMCC simply did not place Payne in a false light.[4] Payne concedes that he had missed payments owed on the installment contract before FMCC sought relief in the courts. ECF 18 ¶ 4 ("Discharged from the Army and without steady work in Panama, Mr. Payne missed some car payments."). While Payne has alleged procedural missteps in FMCC's acquisition and enforcement of the various court judgments, the substance of the judgments was entirely true and accurate: Payne failed to make the payments he owed to FMCC on his Mustang. Thus, he cannot sustain a claim for invasion of privacy based on the alleged statements placing him in a false light.

Payne asserts an alternative claim for invasion of privacy based on intrusion upon his seclusion. To state a claim for intrusion upon seclusion under Maryland law, a plaintiff must plead facts amounting to "an intentional intrusion upon another person's solitude, seclusion, private affairs or concerns in a manner which would be highly offensive to a reasonable person." *Trundle v. Homeside Lending Inc.*, 162 F. Supp. 2d 396, 401 (D. Md. 2001) (citing *Bailer v. Erie Ins. Exchange*, 344 Md. 515, 526 (1997)). "[T]he intrusion on seclusion tort deals with the manner in which Defendant obtained the information rather than the truth or falsehood of the information itself." *Id.* Essentially, "the gist of the offense is the intrusion into a private place or the invasion of a private seclusion that the plaintiff has thrown about his person or affairs." *Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133, 163 (1986).

---

[4] To the extent, at times, FMCC may have misrepresented Payne's place of residence to the Maryland or Florida courts, that information would not expose him to "scorn, hatred, contempt, or ridicule."

Payne's attempt to use the tort of intrusion upon seclusion tries to force a square peg into a round hole. He cites no instances, under Maryland law, where a financial harm, such as wrongful garnishment or the filing of a civil action, has been found to constitute intrusion upon seclusion. To treat this standard litigation conduct as intrusion upon seclusion would impermissibly stretch the tort to encompass myriad civil suits. After all, parties engaging in litigation over financial disputes often make otherwise private facts public, because court documents must be publicly filed. Similarly, garnishment of one's bank account or wages to satisfy a judgment can be broadly described as an "intrusion" into one's personal finances. Many people would describe being sued, or having a judgment collected, as "offensive" or "highly offensive," particularly when they believe the other party's legal position to be unjust. Allowing these circumstances to constitute the tort of "intrusion upon seclusion" would allow almost any civil defendant to file that tort claim, an outcome at odds with common sense and Maryland case law.

It is clear, from the Maryland cases interpreting or discussing intrusion upon seclusion, that its reach has been confined to traditional personal privacy interests, and has not been expanded to finances. *See, e.g.*, *Mitchell v. Baltimore Sun Co.*, 164 Md. App. 497 (Md. Ct. Spec. App. 2005) (a reporter entering the nursing room home of an elderly Congressman, without permission, to conduct an interview); *Bailer v. Erie Ins. Exchange*, 344 Md. 515 (1997) (use of a concealed video camera to film an au pair in the bathroom); *Harleysville Preferred Ins. Co. v. Rams Head Savage Mill, LLC*, 237 Md. App. 705 (Md. Ct. Spec. App. 2018) (manager's surreptitious videotaping of women using the restroom at a restaurant); *Furman v. Sheppard*, 130 Md. App. 67 (Md. Ct. Spec. App. 2000) (finding that plaintiff did not state intrusion upon seclusion claim where investigator took photographs at a private club of the plaintiff sailing on his yacht in a place where he could be observed by the public); *Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133 (Md. Ct. Spec. App. 1986) (placing a detective device on the door of a motel room where the plaintiff was

staying); *Awah v. Wells Fargo Dealer Servs., Inc.*, 2019 WL 410412, at \*2 (Md. Ct. Spec. App. Jan. 31, 2019) (finding that 15 to 17 phone calls from a debt collector to a debtor did not "show that the volume and timing of the phone calls amounted to an intentional intrusion upon his seclusion that 'would be highly offensive to a reasonable person.'"). This Court declines to spearhead the expansion of the tort of intrusion upon privacy into the context of the execution of court judgments. Counts IV and V, therefore, will be dismissed.

### 4. Count VI - Interference with Economic Relationship

In Count Six, Payne alleges, in effect, that FMCC's actions tortiously interfered with his economic relationship with his bank, Wells Fargo. ECF 18 ¶ 108 ("The wrongful garnishment was calculated to cause damage or loss to the Plaintiff's economic rights to maintain a bank account free from illegal garnishments."). Under Maryland law, to state a claim for intentional interference with an economic relationship, a plaintiff must allege,

    (1) intentional and willful acts;
    (2) calculated to cause damage to the plaintiffs in their lawful business;
    (3) done the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and
    (4) actual damage and loss resulting.

*Alexander & Alexander Inc. v. B. Dixon Evander & Assocs.*, 336 Md. 635, 652 (1994) (quoting *Willner v. Silverman*, 109 Md. 341, 355 (1909)). Taking Payne's allegations as true and in the light most favorable to him, Payne has alleged that FMCC obtained the Florida judgment based on information it knew to be false (specifically Payne's residence at the commercial warehouse in Florida), and then obtained a garnishment order based on the judgment it knew to be invalid. While there appear to be some facts that may be difficult for Payne to overcome with respect to proving malicious intent or unlawful purpose, (such as his own allegation that FMCC became confused between Panama City, Florida and Panama City, Panama, and the period of time that elapsed between procurement of the Florida judgment and the garnishment proceedings), if proven, the

allegations in the Complaint plausibly state a claim that FMCC intended to, and did, cause damage to Payne's business relationship with his bank with an unlawful purpose.  Count Six, therefore, accords with the pleading standard and will not be dismissed.

## IV.   Conclusion

For the reasons set forth above, FMCC's Motion to Dismiss, ECF 25, will be DENIED as to Counts I and VI, and granted as to the remaining counts, which will be dismissed without prejudice.  A separate Order follows.


Dated:  September 3, 2020


                                                      /s/
                                               Stephanie A. Gallagher
                                               United States District Judge